UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALICE F., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 17-cv-3710 |
| | ) |
| HEALTH CARE SERVICE | ) |
| CORPORATION, d/b/a BLUE CROSS | ) |
| BLUE SHIELD OF ILLINOIS, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSE TO COMPLAINT**

Defendant Health Care Service Corporation ("HCSC"), a Mutual Legal Reserve Company doing business in Illinois as Blue Cross and Blue Shield of Illinois ("BCBSIL"), responds to Plaintiff Alice F.'s ("Plaintiff") Complaint as follows:

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"), and in particular, ERISA §§ 502(e)(1) and (f) (29 U.S.C. §§ 1132(e)(1) and (f)). Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan, which, in this case, involves a group health plan insured and administered by HCSC for the benefit of Sandbox Holding, LLC ("Sandbox") employees and their dependents.

**RESPONSE:** HCSC denies that Plaintiff has a valid action against it. HCSC admits the remaining allegations.

2. This action may also be brought before the district court pursuant to 28 U.S.C. § 1331, which provides subject matter jurisdiction over actions that arise under the laws of the United States.

**RESPONSE:** HCSC denies that Plaintiff has a valid action against it. HCSC admits that the remaining allegations.

3. Venue is proper in the Northern District of Illinois, Eastern Division pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)) and 28 U.S.C. § 1391.

**RESPONSE:** HCSC denies that Plaintiff has a valid action against it. HCSC admits that the remaining allegations.

4. The ERISA statute provides, at ERISA § 503 (29 U.S.C. § 1133), a mechanism for internal appeals of denied benefit claims. Those avenues of appeal have been exhausted.

**RESPONSE:** Admitted.

## NATURE OF ACTION

5. This case seeks payment of health benefits due under a group health insurance plan, plan number 501, group number P18045 (attached hereto is a true and correct copy of the summary plan description, which is incorporated herein by that reference as Exhibit "A," and the certificate, which is incorporated herein by that reference as Exhibit "B"). The plan name is the "Sandbox Holding, LLC Welfare Benefit Plan" ("Plan"). The Plan is sponsored by Sandbox, employer identification number 47-2438471, and insured and administered by HCSC, to provide health benefits to Sandbox employees. This action is brought as a claim for benefits under ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)). Plaintiff also seeks attorneys' fees under ERISA § 502(g) (29 U.S.C. § 1132(g)).

**RESPONSE:** HCSC denies that Plaintiff has a valid claim against it and that Plaintiff is entitled to attorneys' fees. HCSC admits the remaining allegations.

## PARTIES

6. At all times relevant hereto, Plaintiff, who is currently age 18, is and was a resident of Wilmette, Illinois in Cook County, Illinois; and the events, transactions, and occurrences relevant to her claim for health benefits took place within the Northern District of Illinois, Eastern Division.

**RESPONSE:** Admitted.

7. At all times relevant hereto, HCSC was the insurer and administrator of the Plan, was a corporation with its principal place of business in the State of Illinois, and was doing business within the Northern District of Illinois, Eastern Division.

**RESPONSE:** HCSC denies that it was the Plan Administrator, but admits that it was the Claims Administrator. HCSC admits that it is a mutual legal reserve company. HCSC admits the remaining allegations.

8. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by ERISA § 3(1) (29 U.S.C. § 1002(1)); and incident to Plaintiff's father's

employment with Sandbox, and Plaintiff's status as her father's dependent, Plaintiff received dependent health coverage under the Plan as a "beneficiary" as defined by ERISA § 3(8) (29 U.S.C. § 1002(8)). This claim relates to health benefits under the Plan.

**RESPONSE:** Admitted.

## RELEVANT PLAN PROVISIONS

9. The Plan, in relevant part, provides as follows:

### BLUE CROSS AND BLUE SHIELD MENTAL HEALTH UNIT

The Blue Cross and Blue Shield Mental Health Unit has been established to assist in the administration of Mental Illness and Substance Abuse Rehabilitation Treatment benefits, including Preauthorization review, Emergency Mental Illness or Substance Abuse Admission Review and length of stay/service review for your Inpatient Hospital admissions and/or Outpatient services for the treatment of Mental Illness and Substance Abuse disorders. The Mental Health Unit has staff which includes Physicians, Psychologists, Clinical Social Workers and registered nurses.

(Exhibit B at p. 41).

**MEDICALLY NECESSARY DETERMINATION**

The decision that Inpatient Hospital admission, Outpatient service, or other health care services or supplies are not Medically Necessary, as such term is defined in this Certificate, will be determined by the Mental Health Unit. If the Mental Health Unit Physician concurs that the Inpatient Hospital admission, Outpatient service, or other health care service of supply does not meet the criteria for Medically Necessary care, some days, services, or the entire hospitalization will be denied...

**The Mental Health Unit does not determine your course of treatment or whether you receive particular health care services. The decision regarding the course of treatment and receipt of particular health care services is a matter entirely between you and your Behavioral Health Practitioner. The Mental Health Unit's determination of Medically Necessary care is limited to merely whether a proposed admission, continued hospitalization, Outpatient service, or other health care service or supply is Medically Necessary under this Certificate.**

In the event that the Mental Health Unit determines that all or any portion of an Inpatient Hospital admission, Outpatient service, or other health care service or supply is not Medically Necessary, Blue Cross and Blue Shield will not be responsible for any related Hospital or other health care service or supply charge incurred.

**Remember that your Blue Cross and Blue Shield Certificate does not cover the cost of hospitalization or any health care services and supplies that are not Medically Necessary. The fact that your Behavioral Health Practitioner or another health care Provider may prescribe, order, recommend or approve an Inpatient Hospital admission, Outpatient service, or other health care service or supply does not of itself make such hospitalization, service or supply Medically Necessary. Even if your Behavioral Health Practitioner prescribes, orders, recommends, approves, or views hospitalization or other health care services or supplies as Medically Necessary, Blue Cross and Blue Shield will not pay for the hospitalization, services or supplies if the Mental Health Unit Physician determines they were not Medically Necessary.**

(Exhibit B at pp. 43-44).

### SPECIAL CONDITIONS AND PAYMENTS
### MENTAL ILLNESS AND SUBSTANCE USE DISORDER SERVICES

Benefits for all of the Covered Services described in this Certificate are available for the diagnosis and/or treatment of a Mental Illness and/or Substance Abuse Disorder. Medical Care for the treatment of a Mental Illness or Substance Abuse disorder is eligible when rendered by a Behavioral Health Practitioner working within the scope of their license. Covered Services rendering in a Non-Plan Provider facility will be paid at the Non-Participating Provider facility payment level.

(Exhibit B at pp. 65-67).

**RESPONSE:** HCSC admits that the quoted language is contained in the Summary Plan Description attached as Exhibit B to the Complaint.

10. The Plan further defines the following relevant terms referenced and/or incorporated into the plan provisions cited above as follows:

### DEFINITIONS SECTION

MENTAL ILLNESS.....means those illnesses classified as disorders in the current *Diagnostic and Statistical Manual of Mental Disorders* published by the American Psychiatric Association.

"Serious Mental Illness".....means the following mental disorders as classified in the current *Diagnostic and Statistical Manual* published by the American Psychiatric Association:

(i) Schizophrenia;

(ii) Paranoid and other psychotic disorders;
(iii) Bipolar disorders (hypomanic, manic, depressive and mixed);
(iv) Major depressive disorders (single episode or recurrent); Schizoaffective disorders (bipolar or depressive);
(v) Pervasive developmental disorders;
(vi) Obsessive-compulsive disorders;
(vii) Depression in childhood and adolescence;
(viii) Panic disorder;
(ix) Post-traumatic stress disorders (acute, chronic, or with delayed onset); and
(x) Anorexia nervosa and bulimia nervosa.

RESIDENTIAL TREATMENT CENTER.....means a facility setting offering a therapeutic intervention and special programming in a controlled environment which also offers a degree of security, supervision, structure and structure. Patients are medically monitored with 24 hour medical availability and 24 hour onsite nursing service for patients with Mental Illness and/or Substance Abuse disorders.

(Exhibit B at pp. 7-25).

**RESPONSE:** HCSC admits that the quoted language is contained in the Summary Plan Description attached as Exhibit B to the Complaint.

## STATEMENT OF FACTS
### Plaintiff's Medical and Treatment History

11. Plaintiff first began exhibiting mental health and behavioral issues during her adolescence. Since then, Plaintiff has been diagnosed with attention deficit and hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), major depressive disorder, generalized anxiety disorder, oppositional defiant disorder, borderline personality disorder, cannabis use disorder, parent-child relational problems, and neurocognitive disorders. On account of those conditions, Plaintiff engaged in self-harming behavior, for which she has received extensive mental health treatment including, but not limited to, outpatient medication management and psychotherapy. Plaintiff's diagnoses are recognized mental health conditions encompassed within the American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) ("DSM-V"), and are defined as severe mental illnesses under federal law, specifically the Federal Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"). 29 U.S.C. § 1185a.

**RESPONSE:** HCSC admits that Plaintiff's diagnoses are recognized mental health conditions encompassed within the American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) ("DSM-V"). HCSC denies that the Federal Mental

- 5 -

Health Parity and Addiction Equity Act of 2008 ("MHPAEA") defines Plaintiff's diagnoses as severe mental illnesses. HCSC is without knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff is diagnosed with neurocognitive disorders, that Plaintiff has been treated with outpatient medical management, and that Plaintiff has engaged in self-harming behavior on account of her diagnoses, and therefore denies them. HCSC admits that Plaintiff's medical records state the remainder of what is alleged in paragraph 11, but HCSC lacks knowledge or information sufficient to determine the accuracy of the statements. Except as expressly admitted herein, HCSC denies the allegations of paragraph 11.

12. Over four separate days from June 24 to July 10, 2014, Plaintiff underwent a comprehensive neuropsychological assessment with psychologist, Warren Rosen, Ph.D. After administering a battery of diagnostic tests, Dr. Rosen concluded that Plaintiff suffered from ADHD, a specific learning disorder with impairment in mathematics; and an unspecified neurodevelopmental disorder with deficits in executive functioning, organization and integration emotional regulation, and delayed attainment of gratification. Around that time, Plaintiff additionally attended regular individual and family therapy sessions with social worker, Jean Odwazny, L.C.S.W., and was treated by child psychiatrist, Jonathan Bloomberg, M.D.

**RESPONSE:** HCSC admits that Dr. Rosen's records state what is alleged in paragraph 11 regarding his assessment and findings and regarding therapy sessions with Jean Odwazny, but HCSC lacks knowledge or information sufficient to determine the accuracy of the statement. HCSC admits that Plaintiff's records indicate that Dr. Bloomberg worked with her in 2014, but HCSC lacks knowledge or information sufficient to determine the accuracy of the statement. Except as expressly admitted herein, HCSC denies the allegations of paragraph 12.

13. During the summer of 2014, Plaintiff's mental health condition significantly deteriorated; and she began self-medicating with illicit drugs, including cannabis, methamphetamines, psilocybin mushrooms, and prescription medications. During that time, she was also the victim of multiple violent sexual assaults.

**RESPONSE:** HCSC is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

14. Due to Plaintiff's escalating mental health problems and drug use, and minimal improvement despite years of outpatient mental health treatment, Plaintiff required admission to an intensive outdoor therapy program called Second Nature in Duchesne, Utah on February 18, 2015. Second Nature "is a licensed adolescent treatment program that utilizes the experiential opportunities of a wilderness setting with a clinically focused intervention" involving "individual and group therapy" coordinated by a licensed psychologist and implemented by "the residential staff."

**RESPONSE:** HCSC admits that Plaintiff was admitted to Second Nature on February 18, 2015. HCSC admits that Vista's records indicate that she had years of outpatient mental health treatment and contain a description of Second Nature that is stated in paragraph 14, but HCSC lacks knowledge or information sufficient to determine the accuracy of the statements. HCSC denies that Plaintiff required admission to Second Nature. HCSC is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies them. Except as expressly admitted herein, HCSC denies the allegations of paragraph 14.

15. Plaintiff was referred to Second Nature by Dr. Bloomberg, who has explained the medically necessary rationale for such treatment as follows:

> I recommended to Ali's parents that she be immediately transferred to a Residential Setting so that she might address her dangerous lifestyle and be removed from the dangerous and criminal individuals with whom she associated with on a regular basis. In my opinion, it made no sense to have her attend an outpatient program, find a new therapist, or be admitted to a short term inpatient psychiatric unit. Ali's life was in danger and it was imperative that she be transferred to a long term Residential Setting away from home in order to save her life.

Plaintiff was also referred to Second Nature by therapeutic placement consultant, Roslyn Lessem, L.C.P.C., who similarly explained the medical necessity of such treatment by pointing out: "[d]ue to circumstances and regard for safety, the recommendation was made to send Plaintiff to an outdoor therapeutic program where she could be physically and emotionally safe and participate in intensive therapy to address core issues."

**RESPONSE:** HCSC admits that Dr. Bloomberg's letter contains the quoted statement, but HCSC lacks knowledge or information sufficient to determine the accuracy of the statement. HCSC admits that Roslyn Lessem's letter states that it was determined that Second Nature would

- 7 -

be an appropriate fit and contains the quoted language, but HCSC lacks knowledge or information sufficient to determine the accuracy of the statements. HCSC denies the remaining allegations. Except as expressly admitted herein, HCSC denies the allegations of paragraph 15.

16. At the time of her admission to Second Nature, Plaintiff's diagnostic impressions at admission included oppositional defiant disorder, generalized anxiety disorder, parent-child relational problems, ADHD, and cannabis use disorder.

**RESPONSE:** Admitted.

17. Plaintiff was discharged from Second Nature on May 16, 2015. Although Plaintiff experienced some improvement on account of her treatment at Second Nature, she remained severely impaired and required additional residential treatment on account of the following observations and opinions generated by the Second Nature professional staff:

> Over the course of her stay, she demonstrated little progress in accepting limits, managing her emotions, and displaying appropriate communication and social interactions. A significant amount of structure, support, and feedback from myself and the staff team to maintain adequate social and behavioral support. Considerable staff intervention, including limit setting and logical consequences were often required in order to restore appropriate behaviors and interactions. Despite the frequency of staff intervention, Plaintiff continued to evidence behavioral inconsistency coinciding with emotional reactivity, and future treatment will need to address both of these areas in conjunction.

> While some progress was made, Plaintiff continued to display moderate symptoms of anxiety during the course of treatment, and experienced mixed success in her ability to implement strategies for managing anxiety. It is important to note that Plaintiff struggled to form and sustain healthy and genuine connections with her peers.

> [She] remains at high risk for relapse into substance abuse and its associated problems.

> [S]he struggled to maintain focus and concentration throughout the program, and often failed to complete tasks and assignments as a result. Plaintiff continued to evidence[] highly impulsive behaviors and displayed significant difficulty in managing such impulsivity throughout her stay.

Moreover, the discharge summary report prepared by Coady Schueler, Psy.D., Plaintiff's treating psychologist at Second Nature, stated as follows:

> I remain extremely concerned regarding her risk for relapsing in the areas of conduct/defiance problems, substance abuse and of anxiety were she to return to

- 8 -

her home environment after completing our program. I believe that if any long-term gains are to be made, she must be in a residential or therapeutic boarding school setting after Second Nature so that she can practice and internalize the tools she learned at Second Nature. Returning to her home environment, even with intensive outpatient therapy or school accommodations, would most certainly result in significant regression and a return to her previous level of functioning.

**RESPONSE:** HCSC admits that Plaintiff was discharged from Second Nature on May 16, 2015. HCSC admits that the Second Nature discharge summary indicates some improvement and that it contains the statements as quoted, except the word "support" is used instead of "functioning." HCSC denies the remaining allegations. Except as expressly admitted herein, HCSC denies the allegations of paragraph 17.

18. Plaintiff was thus admitted to Vista Residential Treatment Center ("Vista") in Sandy, Utah on May 26, 2015. Plaintiff's active diagnoses documented at the time of her admission to Vista included ADHD, PTSD, cannabis use disorder, major depressive disorder, oppositional defiant disorder, and borderline personality disorder. Furthermore, Plaintiff was assigned a global assessment of functioning ("GAF") score of 31, which, according to the American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) ("DSM-IV"), represents "some impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." Prior to being admitted to Vista, Plaintiff's highest GAF score in the past year was 28, which, according to the DSM-IV, connotes seriously delusional behavior or judgment, or an inability to function in almost all areas.

**RESPONSE:** HCSC admits that Plaintiff was admitted to Vista on May 26, 2015. HCSC denies that Vista's records list a diagnosis of borderline personality disorder at the time of admission. HCSC admits that Vista's records state the remaining diagnoses, but HCSC lacks knowledge or information sufficient to determine the accuracy of the statement. HCSC is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's GAF scores and therefore denies them. Except as expressly admitted herein, HCSC denies the allegations of paragraph 18.

19. At Vista, Plaintiff continued to receive intensive mental health treatment including, but not limited to, individual, family, and group therapy; along with an extensive prescription medication regime.

**RESPONSE:** HCSC admits that Plaintiff's Vista's records state that she received individual, family, and group therapy and that she was prescribed medication at Vista, but HCSC lacks knowledge or information sufficient to determine the accuracy of the statements. HCSC is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies them. Except as expressly admitted herein, HCSC denies the allegations of paragraph 19.

20. On May 15, 2016, Plaintiff was discharged from Vista. Plaintiff's discharge diagnoses still included ADHD, cannabis use disorder, major depressive disorder, and oppositional defiant disorder, as well as attachment issues related to her adoption. Although some improvement in Plaintiff's mental health condition was documented, it was further determined that Plaintiff still should not return home because she required continued "therapeutic support" and "structure in order to develop new habits as she is still prone to negative and inappropriate behaviors."

**RESPONSE:** HCSC admits that Plaintiff was discharged from Vista on May 15, 2016. HCSC admits that Vista's records state the quoted language and the discharge diagnoses of ADHD, cannabis use disorder, major depressive disorder, and oppositional defiant disorder, as well as attachment issues related to her adoption, but HCSC lacks knowledge or information sufficient to determine the accuracy of the statements. HCSC denies the remaining allegations. Except as expressly admitted herein, HCSC denies the allegations of paragraph 20.

21. Following her discharge from Vista, Plaintiff immediately began receiving treatment at Northwest Academy ("NWA"), a therapeutic boarding school in Naples, Idaho. As part of her treatment at NWA, Plaintiff underwent another neuropsychological evaluation performed by psychologist, Russell Hyken, Ph.D., on February 15, 2017 and February 16, 2017. Dr. Hyken found that Plaintiff continued to struggle from generalized anxiety disorder, major depressive disorder, ADHD, a specific learning disorder with impairment in mathematics, parent-child relationship problems, peer problems, and academic problems. Dr. Hyken ultimately concluded that Plaintiff needed to "[r]emain in residential treatment," and further explained as follows:

A significant advantage of receiving therapy in a residential setting is that Plaintiff may be more motivated to participate in therapy because it is the culture of the program. Plaintiff will benefit most from a supportive environment that is experienced with cluster B traits, substance use issues, emotionally dysregulated students, student with executive functioning issues, etc.

**RESPONSE:** HCSC admits that Plaintiff was admitted to Northwest Academy on May 15, 2016 after her discharge from Vista. HCSC is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies them. Except as expressly admitted herein, HCSC denies the allegations of paragraph 21.

### Plaintiff's Benefit Claim for Residential Treatment at Second Nature

22. Plaintiff submitted a timely claim for coverage under the Plan for the mental health treatment she received at Second Nature from February 18, 2015 until she was discharged on May 16, 2015.

**RESPONSE:** Admitted.

23. On or around November 9, 2015, HCSC denied coverage for the mental health treatment Plaintiff received at Second Nature due to Plaintiff's alleged failure to obtain pre-authorization for coverage before entering treatment. HCSC also claimed that Second Nature was not a licensed residential treatment facility, but instead an "Outdoor Youth Treatment Center," which was allegedly excluded from coverage under the Plan.

**RESPONSE:** HCSC admits that, on November 9, 2015, it updated the denial of coverage for treatment at Second Nature due to Plaintiff's failure to obtain preauthorization. HCSC admits that Plaintiff failed to obtain preauthorization and that the Plan excluded coverage. HCSC denies any remaining allegations. Except as expressly admitted herein, HCSC denies the allegations of paragraph 23.

24. On March 28, 2016, Plaintiff appealed HCSC's denial of coverage the mental health treatment she received at Second Nature, and submitted additional reasoning and evidence supporting the appropriateness, medical necessity, and emergency need for that treatment under the Plan.

**RESPONSE:** HCSC admits that Plaintiff appealed the denial on March 28, 2016 and denies the remaining allegations. Except as expressly admitted herein, HCSC denies the allegations of paragraph 24.

25. HCSC nonetheless upheld its benefit determination on June 3, 2016. HCSC explained its decision as follows:

> After review we have determined that the claims have been correctly processed according to the billing information and the above noted benefit information for this plan. It has been determined that there is no documentation of the provider or member contacting Blue Cross and Blue Shield of Illinois (BCBSIL) prior to admission to the facility. These services require preauthorization prior to having services rendered. It has also been verified that the provider is not practicing within the scope of benefits of their license. These services are not eligible when rendered by a Behavioral Health provider working outside the scope of their license. At this time, no additional reimbursement is available.

**RESPONSE:** Admitted.

26. On August 2, 2016, Plaintiff submitted a second appeal to HCSC regarding its denial of coverage for the mental health treatment she received at Second Nature from February 18, 2015 to May 16, 2015, and once again submitted additional reasoning and evidence supporting the necessity of coverage of that treatment under the Plan.

**RESPONSE:** HCSC admits that Plaintiff submitted an appeal on August 2, 2016 and denies the remaining allegations. Except as expressly admitted herein, HCSC denies the allegations of paragraph 26.

27. HCSC denied Plaintiff's August 2, 2016 appeal letter on September 2 and 26, 2016 because the internal appeal process had already been completed.

**RESPONSE:** Admitted.

28. Accordingly, all required pre-litigation appeals seeking the payment of health benefits for the mental health treatment Plaintiff received while admitted at Second Nature between approximately February 18, 2015 and May 16, 2015, have now been exhausted pursuant to 29 U.S.C. § 1133. Therefore, this matter is ripe for judicial review.

**RESPONSE:** Admitted.

29. Moreover, contrary to the reasons asserted by HCSC, the services at issue, i.e., the mental health treatment Plaintiff received while admitted at Second Nature between February 18,

2015 and May 16, 2015 should have been covered under the terms of the Plan. As a result, Plaintiff and her family have improperly incurred unreimbursed expenses for that treatment in the total approximate amount of $48,015.00 that should have been covered and/or reimbursed under the Plan. As a direct and proximate result thereof, Plaintiff states a claim for benefits due under the terms of an employee welfare benefit plan for that treatment, and is entitled to recover all the expenses incurred thereunder that were not reimbursed, as well as the costs of this suit and her attorneys' fees.

**RESPONSE:** Denied.

### Plaintiff's Benefit Claim for Residential Treatment at Vista

30. Plaintiff also filed timely claims for coverage under the Plan for the residential mental health treatment she received from at Vista from May 26, 2015 until she was released on May 15, 2016.

**RESPONSE:** Admitted.

31. From June 1, 2015 to August 19, 2015, HCSC issued a series of letters approving coverage for the residential mental health treatment Plaintiff received at Vista from approximately May 26, 2015 to August 31, 2015 as being medically necessary under the terms of the Plan.

**RESPONSE:** HCSC admits that it sent correspondence in June and August 2015 approving treatment at Vista as medically necessary from May 26, 2015 to August 31, 2015. HCSC denies any remaining allegations. Except as expressly admitted herein, HCSC denies the allegations of paragraph 31.

32. As of at least mid-July 2015, HCSC re-reviewed Plaintiff's treatment program at Vista and determined that it was "on target," but also acknowledged that Plaintiff remained "at risk for self-harm."

**RESPONSE:** HCSC admits that a July 22, 2015 review noted that the treatment plan was mostly on target. HCSC admits that, on July 22, 2015, personnel at Vista opined that Plaintiff remained at risk for self-harm. HCSC denies any remaining allegations. Except as expressly admitted herein, HCSC denies the allegations of paragraph 32.

33. Shortly thereafter, on August 31, 2015, Dr. Law [sic], a medical director at HCSC, contacted Vista and "recommended an outpatient level of care" for Plaintiff, but

Plaintiff's treating mental health providers at Vista objected and reiterated that Plaintiff "would be at high risk if [s]he were to return home."

**RESPONSE:** HCSC admits that, on August 31, 2015, a physician reviewer, Dr. Lal, spoke to Vista personnel and stated that based on information Vista supplied related to Plaintiff's condition, Plaintiff could be treated safely and effectively in a less restrictive level of care such as outpatient. HCSC admits that, on July 29, 2015, Vista personnel opined that Plaintiff was "at high risk at home," but HCSC lacks knowledge or information sufficient to determine the accuracy of the statement. HCSC denies the remaining allegations. Except as expressly admitted herein, HCSC denies the allegations of paragraph 33.

34. Nonetheless, on September 1, 2015, HCSC denied Plaintiff's coverage for the mental health treatment she received at Vista from that date forward because the treatment was no longer deemed medically necessary. The specific rationale proffered by HCSC was as follows:

> Per the medical necessity provision of your benefit booklet and/or summary plan description a medical necessity review has been completed. Based on the clinical information provided, you did not meet MCG care guidelines for continued treatment at the MENTAL HEALTH RESIDENTIAL TREATMENT (RTC) level of care for the following reasons: There was no report of psychosis or mania. You were not reported as being a[] danger to self or others. There was no evidence of inability to adequately care for yourself with functioning in multiple sphere areas. You were not reported as being aggressive or threatening. There was no report of medical instability. No new issues were reported. You have achieved maximum benefit from the requested level of care. There is no reasonable expectation of significant clinical improvement with the current treatment plan or level of care. The treatment plan is not individualized with specific, objective, measurable and time-limited goals. From the clinical evidence you can be safely treated in a less restrictive setting such as Mental Health Outpatient (OP). The last medically necessary date after this review is 08/31/2015.

HCSC's denial of benefits was based exclusively on the opinions of an in-house psychiatrist, who never even evaluated or spoke with Plaintiff; and was unsupported by, and/or inconsistent with, the Plan's terms and with the evidence provided by the professionals who were treating Plaintiff.

**RESPONSE:** HCSC admits that it denied coverage for treatment at Vista from September 1, 2015 forward as not medically necessary and that the denial letter included the quoted language. HCSC denies the remaining allegations. Except as expressly admitted herein, HCSC denies the allegations of paragraph 34.

35. On February 22, 2016, Plaintiff appealed HCSC's denial of coverage for the residential mental health treatment she received at Vista from September 1, 2015 onward, and submitted extensive additional medical documentation further supporting her need for residential treatment.

**RESPONSE:** HCSC admits that Plaintiff appealed the denial of coverage on February 22, 2016, but denies the remaining allegations. Except as expressly admitted herein, HCSC denies the allegations of paragraph 35.

36. Nonetheless, on May 4, 2016, HCSC upheld its decision to deny coverage for the mental health treatment she received at Vista from September 1, 2015 onward. HCSC reasoned as follows:

> Per the medical necessity provision of your benefit booklet and/or summary plan description a medical necessity review has been completed. Based on the medical records provided, you did not meet MCG care guidelines for continued treatment at the MENTAL HEALTH RESIDENTIAL TREATMENT (RTC) level of care for the following reasons: On the dates in question you were not an acute danger to yourself. You were not an acute danger to others. You were not behaviorally dyscontrolled. You were tolerating medications. You were medically stable. You were not reported to be psychotic. You had adequate self-care. You were participating and cooperative with treatment. You had a supportive family home environment. From the clinical evidence presented, you could have been safely treated at the MENTAL HEALTH OUTPATIENT level of care. The last medically necessary date after this review is 08/31/2015.

HCSC's denial of benefits was once again based exclusively on the opinions of non-examining psychiatrist; and was unsupported by, and/or inconsistent with, the Plan's terms.

**RESPONSE:** HCSC admits that it upheld the denial of coverage on May 4, 2016 and that the denial included the quoted language. HCSC denies the remaining allegations. Except as expressly admitted herein, HCSC denies the allegations of paragraph 36.

37. On August 2, 2016, Plaintiff submitted a second appeal to HCSC regarding its denial of coverage for the residential mental health treatment she received at Vista from September 1, 2015 to May 15, 2016, as well as from Second Nature previously, and once again submitted additional reasoning and evidence supporting the ongoing medical necessity for that level of treatment.

**RESPONSE:** HCSC admits that Plaintiff appealed the denial of coverage on August 2 2016 and denies the remaining allegations. Except as expressly admitted herein, HCSC denies the allegations of paragraph 37.

38. HCSC denied Plaintiff's August 2, 2016 appeal on September 2, 2016 because the internal appeal process had already been completed.

**RESPONSE:** Admitted.

39. Accordingly, all required pre-litigation appeals seeking the payment of health benefits for the mental health treatment Plaintiff received while she was admitted at Vista from May 26, 2015 to May 15, 2016 have now been exhausted pursuant to 29 U.S.C. § 1133. Therefore, this matter is ripe for judicial review.

**RESPONSE:** Admitted.

40. Moreover, contrary to the reasons asserted by HCSC, the services at issue, i.e., the mental health treatment Plaintiff received while admitted at Vista between May 26, 2015 and May 15, 2016 were medically necessary services that should have been covered under the terms of the Plan. As a result, Plaintiff and her family have improperly incurred unreimbursed expenses for that treatment in the total approximate amount of $91,590.00 that should have been covered and/or reimbursed under the Plan. As a direct and proximate result thereof, Plaintiff states a claim for benefits due under the terms of an employee welfare benefit plan and is entitled to recover all the expenses incurred thereunder that were not reimbursed, as well as the costs of this suit and her attorneys' fees.

**RESPONSE:** Denied.

**RELIEF SOUGHT**

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in Plaintiff's favor and against Defendant, and order Defendant to reimburse Plaintiff in an amount equal to the contractual amount of health benefits to which she is entitled, i.e., for the approximately $139,605.00 in total charges incurred for her treatment at Second Nature and Vista that should have been covered under the Plan;

B. That the Court order Defendant to pay Plaintiff prejudgment interest on all past due health benefits that have accrued prior to the date of judgment;

C. That the Court award Plaintiff attorneys' fees pursuant to ERISA § 502(g) (29 U.S.C. § 1132(g)); and

D. That the Court award Plaintiff any and all other penalties, damages, and equitable relief to which he may be entitled, as well as his costs of suit.

**RESPONSE:** Denied.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

1. The Petition fails to state facts sufficient to constitute a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (No Coverage / Exclusions & Limitations)

2. The Petition is barred in whole or in part because the claims asserted are not covered by any insurance or benefit plan(s) at issue by virtue of the exclusions and limitations contained therein.

## THIRD AFFIRMATIVE DEFENSE

### (No Proximate Cause)

3. Any alleged damages were not proximately or legally caused by any action or omission by HCSC.

## FOURTH AFFIRMATIVE DEFENSE

### (No Damages)

4. The Petition is barred in whole or in part due to Plaintiff's lack of damages and/or failure to mitigate damages, if any.

### FIFTH AFFIRMATIVE DEFENSE

### (Full Performance)

5. The Petition is barred in whole or in part because HCSC's alleged obligations, if any, have been fulfilled and discharged.

### SIXTH AFFIRMATIVE DEFENSE

### (Limitation of Remedies under ERISA)

6. If Plaintiff is entitled to any relief, which HCSC disputes, the remedies are limited to those available under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. To the extent that Plaintiff seeks recovery that is not available under ERISA, recovery is barred.

### SEVENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

7. Plaintiff's claims are barred as a result of the failure to mitigate the alleged damages by continuing to pursue medical treatment that was not covered by the Policy, rather than medical treatment that may have been available under the Policy.

### EIGHTH AFFIRMATIVE DEFENSE

### (Not Arbitrary and Capricious)

8. Denials of Plaintiff's claim for benefits were not arbitrary and capricious and/or were otherwise in accordance with the terms of the Policy.

### NINTH AFFIRMATIVE DEFENSE

### (Reservation of Affirmative Defenses)

9. HCSC reserves the right to subsequently assert and add affirmative defenses as they become known, including but not limited to conditions and/or exclusions and contractual defenses.

**WHEREFORE,** HCSC prays for judgment as follows:

a. That Plaintiff take nothing by the Petition;

b. For declaratory judgment in favor of HCSC and against Plaintiff;

c. For HCSC's attorney's fees to the extent recoverable by law;

d. For HCSC's costs of suit incurred herein; and

e. For such other and further relief as the Court may deem just and proper.

Dated: July 12, 2017

    Respectfully submitted,

    /s/ *Rebecca R. Hanson*
    Martin J. Bishop, No. 6269425
    Rebecca R. Hanson, No. 6289672
    Alexandra Lucas, No. 6313385
    Reed Smith LLP
    10 South Wacker Drive, 40th Floor
    Chicago, Illinois 60606
    Voice: 312.207.1000
    Fax: 312.207.6400
    Email: mbishop@reedsmith.com
    Email: rhanson@reedsmith.com
    Email: alucas@reedsmith.com

    *Counsel for Defendant Health Care Service Corporation*

## **CERTIFICATE OF SERVICE**

  I, Rebecca R. Hanson, an attorney, certify that on July 12, 2017, I caused a true and correct copy of the foregoing document to be filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record.

                /s/ Rebecca R. Hanson